594 So.2d 1021 (1992)
Michelle GILLIAM, Plaintiff-Appellee,
v.
K-MART, INC., et al., Defendants-Appellants.
No. 90-746.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
Domengeaux & Wright, Robert Tracy, Lafayette, Keifer & Rudman, Roger B. Jacobs, Metairie, for plaintiff-appellee.
Gold, Weems, Bruser, Sues & Rundell, Peggy St. John, Alexandria, for defendants-appellants.
Before GUIDRY, FORET and LABORDE, JJ.
FORET, Judge.
On June 16, 1985, Dale Lee Jorgensen broke into the Admiral Doyle K-Mart in New Iberia, Louisiana. He took a .22 caliber rifle and ammunition and went on to the Charter Service Station on Center Street. He walked up to Earl Gilliam, Jr., sitting in his car at the gas pumps, pointed the rifle at him and shot him. He then pulled Mr. Gilliam out of the car, jumped into the car, and drove off. He went on to Baton Rouge and had the windshield of the car replaced because of the bullet holes. The following day, while driving on Interstate 10 between Sorrento and Gonzales, he pulled up alongside Earl Gooden's car, aimed his rifle, shot him, and pulled away. Neither Mr. Gilliam nor Mr. Gooden knew Jorgensen nor had ever done anything to provoke these shootings. As a result of Jorgensen's shooting spree, Mr. Gilliam was killed and Mr. Gooden injured.
Michelle Gilliam, widow of Earl Gilliam, Jr., and Earl S. Gooden filed suit, naming as defendants, K-Mart, its insurer, City of New Iberia and its insurer, and Dale Lee Jorgensen.[1] All defendants were dismissed except K-Mart and its insurer. The trial court found K-Mart liable to the plaintiffs. K-Mart appeals.
The cases were tried to a jury. The trial judge charged the jury on three theories of liability: strict liability, ordinary negligence, and negligence based on a breach of a duty "voluntarily assumed" by a defendant.
The jury's verdict was in the form of interrogatories:
"VERDICT FORM
1. Before June 16, 1985 was it forseeable that a burglar would steal a rifle from K-Mart and shoot people in the area in which Mr. Guilliam was shot?
 YES ___ No &check;

*1022 2. Before June 16, 1985 was it forseeable that a burglar would steal a rifle from K-Mart and shoot people in the area in which Mr. Gooden was shot?
 YES ___ NO &check;
3. Did K-Mart assume the responsibilty of protecting the public from a gunshot wound by a burglar who may steal a gun from its store?
 YES &check; NO ___
(If you answer # 1, # 2 and # 3 no, answer no other questions.)
4. If you answer # 1, # 2 or # 3 yes, did K-Mart act as we might reasonably expect of an extraordinarily cautious person?
 YES ___ NO &check;
5. Was there a defective thing owned or possessed by K-Mart?
 YES &check; NO ___
6. Did K-Mart's fault cause damage to Mrs. Guilliam?
 YES &check; NO ___"
We find that no reasonable juror could have found K-Mart liable for the injuries sustained due to either the assumption of a duty to protect the general non-patron public or due to the ownership or possession of a defective "thing" as stated in the jury's verdict form. Thus, we reverse the jury finding of K-Mart's liability.

FACTS
In June of 1985, the K-Mart store on Admiral Doyle Drive in New Iberia was protected by perimeter alarms on the doors and infra red motion detectors inside the store. The firearms inventory was kept in a locked storeroom. Rifles on display were in a locked gun rack in the sporting goods section. The store was closed on this particular Sunday, June 16, 1985, but a part-time clerk, Troy Mallach, was restocking the store that day.
When Mallach worked on Sundays, an assistant manager would open the front door, turn off the motion detectors so Mallach could move around and work inside the store, lock Mallach in the store, and turn on the perimeter alarms. This was done this particular Sunday. The assistant manager, Ron Felder, let Mallach in about 9:00 o'clock in the morning and returned to let him out at about 3:00 o'clock that afternoon. After Mallach walked out the front door, Felder walked to the office to reset the motion detectors. The motion detectors would not set so he left them off, walked out, locked the front door, and turned on the final perimeter alarm.
The next morning, K-Mart personnel opened the store and discovered that the store had been burglarized. The burglar entered the store by shattering the glass of a patio door. An inventory check revealed a .22 rifle had been removed from a locked display case and stolen. The only plausible explanation is that the burglar entered the store while Mallach was working on that Sunday, but Mallach heard and saw nothing to indicate the intruder's presence since the motion detectors were off. The perimeter alarm did not activate because the door frame was not moved. The burglar, Jorgensen, was a deranged drifter from California. He went on a shooting spree with the gun. Mr. Gilliam was shot and killed in another area of New Iberia that Sunday afternoon (June 16), and Earl Gooden was shot while driving on the interstate highway between Sorrento and Gonzales, Louisiana, on June 17. Jorgensen was judged incompetent to stand trial on murder charges.

ASSIGNMENTS OF ERROR
K-Mart contends:
1. The jury was manifestly erroneous in finding K-Mart strictly liable because there is no evidence of a "defect";
2. The jury was manifestly erroneous in finding K-Mart liable for breach of duty voluntarily assumed, because there is no evidence K-Mart assumed the duty to protect the general public from being shot with a rifle stolen from K-Mart in a burglary.[2]
*1023 Michelle Gilliam answered the appeal, contending that the trial court erred in finding that it was not foreseeable that a burglar would steal a rifle from K-Mart and shoot people in the area in which Mr. Gilliam was shot.[3]
In answering the interrogatories, the jury found K-Mart at fault for two reasons: (1) as owner of a defective thing (strict liability) and (2) breach of an assumed duty to protect the public (negligence). We do not find evidence to support the jury finding of liability under either theory of recovery.
On the strict liability issue, we find no evidence that the K-Mart premises were defective, much less that the alleged defect caused the harm. Plaintiffs contend that the defective "thing" was the premises due to the negligence of K-Mart. We disagree. This case turns on whether there is a finding of actionable negligence on the part of K-Mart.
In determining negligence liability, the courts of this State have adopted a duty-risk analysis approach. To hold K-Mart liable for its negligence, each of the following questions must be answered in the affirmative: (1) Did the defendant owe a duty to the plaintiff? (2) Was this duty breached? (3) Was the breach of duty a substantial factor in bringing about harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (4) Do the risk and harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached? See Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Broussard v. Yellow Freight Lines, Inc., 464 So.2d 987 (La.App. 1 Cir.1985); Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1 Cir.1982), writ denied, 429 So.2d 127, 429 So.2d 134 (La.1983); LeBlanc v. State, Through Dept. of Corrections, 393 So.2d 125 (La.App. 1 Cir.1980), writ denied, 394 So.2d 1235 (La.1980).
The injuries in this case are a result of a deranged person on a shooting spree with a stolen rifle. We first inquire whether any causal relationship existed between the harm to the plaintiffs and K-Mart's allegedly negligent conduct. If the defendant's employees had not left the K-Mart store without finding why the motion detectors would not activate, then Jorgensen may not have obtained the rifle. To this extent it may be said that the defendant's act had something to do with the harm.
However, if the defendant's conduct of which the plaintiffs complain is a cause-in-fact of the harm, we are then required, in a determination of negligence, to ascertain whether the defendant breached a legal duty imposed to protect against the particular risk involved. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972).
It is only conduct which creates an appreciable range of risk for causing harm that is prohibited. If we assume that K-Mart was under a duty to ascertain why motion detectors could not be set because of an unreasonable risk of harm resulting from the use of a stolen weapon, the breach of that duty does not necessarily give rise to liability in this case. Although K-Mart would owe a duty to protect certain persons, i.e., its patrons, under certain circumstances from this risk, it is not an insurer against every risk of harm which is encountered in connection with K-Mart's actions.
The basic question, then, is whether the risk of injury from K-Mart's actions, or inactions, produced by a combination of its act and that of a third party, is within the scope of protection of a rule of law which would prohibit such actions or inactions.
K-Mart's alleged misconduct, its alleged breach of duty, was in not having adequate security devices and procedures in place. The risk encountered by the plaintiffs which caused their harm was a deranged drifter on a shooting spree. The record is devoid of any evidence tending to establish that K-Mart could have reasonably anticipated that this deranged drifter, or any third party, would unlawfully enter the K-Mart *1024 premises, steal a .22 rifle, and create this risk.
We are of the opinion that K-Mart was under no duty to protect these plaintiffs from the risk which gave rise to the injuries suffered. The jury found that it was not "foreseeable that a burglar would steal a rifle from K-Mart and shoot people in the area" in which the plaintiffs were shot. In response to Gilliam's answer to this appeal, we agree with that portion of the jury verdict. There is no evidence from which the jury could conclude that K-Mart could have reasonably foreseen that its action or inaction would harm these plaintiffs as a natural and probable consequence of its negligence.
Conversely, the jury's verdict is inconsistent where the jury found that the defendants assumed the responsibility of protecting the public from the risk of being shot with a gun stolen from the New Iberia K-Mart. The law of negligence holds a party to anticipation as a measure of duty. We cannot say on the one hand that K-Mart could not have foreseen the occurrence and on the other that it assumed the duty to prevent such occurrence.
Further, we find no Louisiana case where a store owner has been held liable in negligence or strict liability for the safety of the general public where the public is not a business patron or, at the minimum, physically found within the perimeters of the business.
Considering the above, we find the jury was manifestly erroneous in its finding as to interrogatories # 3 and # 4. Accordingly, we reverse the judgment of the trial court and dismiss plaintiffs' suit with prejudice.
Costs of this appeal and at the trial level are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.
NOTES
[1] Two separate suits were filed and consolidated for trial. A separate opinion will be rendered in the consolidated case of Gooden v. K-Mart, Inc., our docket number 90-747 594 So.2d 1024 (La. App. 3 Cir.1992).
[2] K-Mart's assignments of error no. 3 and 4 regarding the excessive damage awards need not be addressed since we are reversing on the liability issue.
[3] Gilliam also contends the damage award should be increased and asks for exemplary damages. We also pretermit that issue upon our reversal of the liability issue.